UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ERIC ALAN MOORE,<br><br>　　　　　Defendant. | No. 1:12-cr-00349-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. Nos. 106, 111, 112) |

Pending before the court is defendant Eric Alan Moore's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 112.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On June 12, 2013, defendant Moore entered pleas of guilty to both counts of a superseding information filed in this case charging him in Count One with conspiracy to commit theft of firearms from a federal firearms licensee and possession of stolen firearms in violation of 18 U.S.C. § 371 and in Count Two with a separate conspiracy also in violation of 18 U.S.C. § 371. (Doc. Nos. 54, 55, 60.) In short, defendant burglarized an outdoor sporting goods store on two

1

separate occasions, stealing 11 firearms in the first burglary and 43 firearms in the second.  (Doc. No. 66 (Presentence Report) at 4–5).  About a week later, one of those stolen firearms was recovered from the possession of a Bulldog street gang member.  (*Id.* at 5.)  Following his entry of his guilty pleas, it was determined that under the U.S. Sentencing Guidelines defendant Moore's adjusted offense level was 34 and his criminal history placed him in category VI.  (*Id.* at 23.)  Although defendant's adjusted offense level and criminal history category would have resulted in an advisory sentencing guideline range calling for a term of imprisonment of between 262 and 327 months, the maximum penalty for each count was 60 months imprisonment on each count, making the advisory guideline range of 120 months.  (*Id.* at 17, 23. )[1]  The U.S. Probation Office recommended a sentence of 60 months on Count One and 60 months on Count Two with those terms to run consecutively for a total prison sentence of 120 months.  (*Id*. at 23–24.)  On August 12, 2013, the court sentenced defendant to consecutive 60 month terms of imprisonment on both counts for a total term of imprisonment of 120 months with a 36-month term of supervised release to follow, as well as restitution in the amount of $22,667.24 and the $200 mandatory penalty assessment.  (Doc. Nos. 69; 70 at 2–6.)

      Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Lompoc Federal Correctional Institution in Lompoc, California ("FCI Lompoc").  (Doc. No. 112 at 6.)  On August 3, 2020, defendant, appearing *pro se*, filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 106.)  On August 4, 2020, the court referred defendant's motion to the Federal Defender's Office for the Eastern District of California for representation pursuant to General Order 595.  (Doc. No. 107.)  Defendant appearing *pro se* again filed an amended motion on August 10, 2020.  (Doc. No. 111.)  On August 12, 2020, the court entered a briefing schedule and appointed counsel for defendant.  (Doc. Nos. 109, 110.)  On September 9, 2020, defendant, appearing through counsel, filed a supplemental brief in support of defendant's motion for compassionate release.  (Doc. No. 112.)  On September 30, 2020, the

---

[1]  Defendant Moore was originally charged by way of indictment with conspiracy in violation of 18 U.S.C. § 371 (Count 1), possession of stolen firearms in violation of 18 U.S.C. § 922(j) (Count 2), and being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 3).  (Doc. No. 20.)

2

government filed its opposition to the motion, and on October 14, 2020, defendant filed his reply thereto.  (Doc. Nos. 119, 120.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made

---

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C. § 3582(c)(1)(A).

> by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

1   2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be
2   "consistent with" the sentencing factors set forth in §3553(a)).

3   **A.      Administrative Exhaustion**

4         On June 16, 2020, defendant Moore submitted an administrative request to the Warden at
5   FCI Lompoc seeking compassionate release, and the Warden received that request at least by
6   June 23, 2020. (Doc. Nos. 106 at 16; 119-1 at 6.) According to the government, the Warden
7   denied defendant's request on July 24, 2020, although that denial was not mailed until July 29,
8   2020. (Doc. Nos. 119 at 3; 119-1 at 9.) Defendant maintains that, as of September 3, 2020, he
9   had not received the denial of his administrative request. (Doc. No. 112 at 16.) In any event,
10  defendant exhausted his administrative remedies because he filed the pending motion for
11  compassionate release after submitting a request to the Warden and waiting more than 30 days
12  without receiving a response. Therefore, the court will turn to the merits of defendant's motion
13  below.

14  **B.      Extraordinary and Compelling Reasons**

15        "Extraordinary and compelling reasons" warranting compassionate release may exist
16  based on a defendant's medical conditions, age and other related factors, family circumstances, or
17  "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other
18  reasons" was included in the policy statement at a time when only BOP could bring a
19  compassionate release motion, courts have agreed that it may be relied upon by defendants
20  bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-
21  JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

22        Thus, the medical condition of a defendant may warrant compassionate release where he
23  or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life
24  trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a
25  specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive
26  examples of terminal illnesses that may warrant a compassionate release "include metastatic
27  solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced
28  dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. Apr. 10, 2020).

---

[5] However, because defendant Moore is currently only 43 years old, (*see* Doc. No. 66 (Presentence Report) at 2), his age and age-related factors do not play a role in consideration of his pending motion.

7

Here, defendant Moore argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical condition. To qualify for compassionate release, the defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Lompoc and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant Moore argues that his obesity, high blood pressure and hypertension, and various other ailments satisfy this standard. (Doc. No. 112 at 16.) At the outset, the court notes that at the time of his sentencing it was noted that, "defendant advised he is healthy, and other than a broken ankle in 1995, he has no history of health problems." (Doc. No. 66 (Presentence Report) at 16.) Nonetheless, it does appear that defendant's medical situation has changed to some extent since his imprisonment. First, there is support for defendant's claim that he is obese. Though he was not obese when he was sentenced in 2013 (*id.* at 2), defendant's BOP medical records indicate that he gained significant weight while in prison (Doc. No. 116 at 15), placing his body mass index (BMI) at 32.1 and in the obese category. *See Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Oct. 12, 2020). Second, though he was not formally diagnosed as suffering from such a condition, defendant's blood pressure readings have regularly placed him now in the hypertension category. (Doc. No. 116 at 32.) *See High Blood Pressure: High Blood Pressure Symptoms and Causes*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/bloodpressure/about.htm (last visited Oct. 12, 2020) (requiring a systolic reading of 130mm Hg or higher and diastolic reading of 80 mm Hg or higher). Finally, the results of a blood test taken by the BOP in 2016 revealed that defendant had high levels of cholesterol, triglycerides, and liver enzymes. (Doc. No. 112-6.)

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant is at higher risk based on his obesity because his BMI is greater than 30. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Oct. 12, 2020). Furthermore, defendant

"might be at an increased risk for severe illness from COVID-19" because of his hypertension. *Id.* (stating those who suffer from pulmonary hypertension are in fact at risk, as opposed to hypertension generally which "may" place an individual at risk). According to the CDC, defendant does not suffer from any other medical condition, including his high cholesterol, which might place him at greater risk from severe illness were he to contract COVID-19. Nonetheless, according to the CDC, defendant does suffer from some comorbidities.

Defendant tested positive for COVID-19 on May 7, 2020 and, fortunately, nonetheless appears to be doing well from a health perspective. (*See* Doc. No. 112-9 at 2.) Indeed, defendant's BOP medical records reveal that he was asymptomatic and denied suffering from any of COVID-19's major symptoms. (Doc. No. 117 at 2–4 (sealed).) In this regard, defendant denied having a cough, shortness of breath, muscle pain, fatigue, headaches, chills, sore throat, or a new loss in taste or smell. (*Id.* at 3.) Nonetheless, defendant argues that the possibility of his reinfection from COVID-19 weighs in favor of his compassionate release. (Doc. No. 112 at 12.) In this regard, many courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin*, No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where a COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, suffered from a combination of medical conditions that placed him at risk of serious complications from COVID); *see also United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of reinfection, given the high numbers of infected inmates and Defendant's own contraction of the virus."). Other courts have taken the position that uncertainty surrounding the danger of reinfection "cuts against compassionate release," in part because it is the defendant's burden to establish that "extraordinary and compelling reasons" justifying compassionate release exist. *See*

*United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Out of an abundance of caution, the undersigned concludes that because of defendant's obesity and hypertension, combined with the risk of his possible reinfection from COVID-19, he is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Even so, the question remains whether defendant Moore's medical conditions "substantially diminish[] [his] ability . . . to provide self-care" while imprisoned at FCI Lompoc. *See id.*

Based on the current record before the court, the answer to that question is no—defendant has not shown he is substantially hindered in providing self-care. In fact, defendant does not argue that he is hindered at all in taking care of and addressing his obesity and hypertension while incarcerated—aside from his conclusory statement that he "fears being re-infected and becoming gravely ill." (Doc. No. 112 at 12.) Despite having already contracted the virus, defendant Moore appears to be in adequate health at this time. The BOP's medical staff screened defendant each day for 14 days following his positive COVID-19 test, and defendant denied suffering from every major COVID-19 symptom each of those 14 days and reported a normal body temperature for the most part. (*See* Doc. No. 117 at 3–4 (sealed).) About three months before the COVID-19 pandemic first began to have an impact, the BOP medical staff noted that defendant appeared "[w]ell, [a]lert, and [o]rientated." (Doc. No. 116 at 2 (sealed).) Moreover, it appears—and defendant does not contest—that he is receiving proper care from the BOP's medical staff, as shown by his regular medical consultations. (*See generally* Doc. No. 116 (sealed).) Although defendant appears to suffer from hypertension based on his blood pressure readings, the evidence before the court also reflects that he has never complained about any side effects from that condition to the BOP's medical staff. Defendant does not argue that he is somehow hindered in addressing his obesity, for example, through regular exercise. In sum, it appears from the evidence before the court at this time that defendant has the ability to properly care for his medical conditions while incarcerated at FCI Lompoc.

/////

It is true that FCI Lompoc suffered from a significant COVID-19 outbreak, with it being reported by the BOP that 744 inmates and 16 staff tested positive but recovered, while two inmates died at the hands of the virus. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/ coronavirus/ (last visited Oct. 12, 2020).[6] At the moment, however, there are currently zero inmates and three staff who are being reported as having tested positive with COVID-19.[7] Because it appears that current active cases among prisoners at FCI Lompoc have been reduced to zero, adding COVID-19 to the equation thus does not tip the scales in favor of defendant's compassionate release in this case. Even defendant acknowledges that the possibility of contracting the virus again is only a possibility—not a foregone conclusion. (*See* Doc. No. 112 at 12 (stating "we don't know" and it is "unclear whether or not an infected person can *become sick a second time*"—even though defendant Moore himself was not "sick" when he first contracted the virus in May of this year) (emphasis added).) While the degree of risk to defendant of becoming re-infected with COVID-19 is still unknown, that possibility provides no basis upon which the court could conclude that defendant is "substantially diminishe[d]" in his ability to "provide self-care" at FCI Lompoc. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant Moore has failed to carry his burden in this regard. *See Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

Therefore, in this case, the court does not find extraordinary and compelling reasons justifying compassionate release pursuant to § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion and supplemental brief fail to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the

---

[6] FCI Lompoc has a population of 962 inmates. *FCI Lompoc*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lof/ (last visited Oct. 12, 2020).

[7] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

sentencing factors set forth at 18 U.S.C. § 3553(a). Nonetheless, the court notes that the criminal conduct resulting in defendant's criminal convictions was extremely serious, involving the theft of a large number of firearms, one of which was later discovered in the possession of criminal street gang member. But for the applicable statutory maximum sentences, defendant's advisory sentencing guideline range would have much higher than the sentence that was imposed in his case.

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. Nos. 106, 111, 112) is denied.

IT IS SO ORDERED.

Dated:  **October 19, 2020**  _____
UNITED STATES DISTRICT JUDGE